UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | No. 5:11-CR-108-JMH-HAI-2 |
| ) | No. 5:13-CV-7283-JMH-HAI |
| v. ) | |
| ) | |
| PATRICK LAMONT PATTERSON, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant/Movant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On June 13, 2013,[1] Defendant Patrick Lamont Patterson filed, pro se, a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. D.E. 137. The United States filed its response on October 7, 2013. D.E. 148. Defendant filed his reply on November 15, 2013. D.E. 150. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition. For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his motion be **DENIED**, and that no certificate of appealability be issued.

## I. BACKGROUND

### A. Arraignment to Sentencing

On September 1, 2011, a federal grand jury returned an indictment as to Damon Allen Patterson, Patrick Lamont Patterson, and Marsha Latrice McCrary. D.E. 1. The indictment contained four counts, only three of which named Defendant. *See id.* Count 1 charged

---

[1] This is the date that Defendant placed his section 2255 Motion in the prison mailing system. D.E. 62 at 11. Thus, it is the date that Defendant's Motion was filed according to the prison mailbox rule. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270–72 (1988) to section 2255 motions).

Defendant with conspiracy to distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. *Id.* Count 2 charged Defendant with conspiracy to distribute 1) a mixture or substance containing a detectable amount of cocaine; 2) 3,4-methylenedioxymethamphetamine (MDMA or Ecstacy); and 3) a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. *Id.* Count 3 charged Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Id.*

On March 16, 2012, the United States filed a Notice Regarding Enhanced Statutory Punishment, citing three Michigan cases in which Defendant was found guilty of possession of a controlled substance. D.E. 90. This subjected Defendant to enhanced penalties as to Counts 1 and 2. *Id.* As to Count 1, Defendant faced a statutory minimum term of incarceration of 10 years, a statutory maximum term of incarceration of life, a fine of not more than $8,000,000.00, and a supervised release term of not less than eight years. *See* 21 U.S.C. § 841(b)(1)(B). As to Count 2, Defendant faced a statutory mandatory maximum term of imprisonment of 30 years, a fine of not more than $2,000,000.00, and a supervised release term of at least six years. *See* § 841(b)(1)(C). As to Count 3, Defendant faced a statutory maximum term of incarceration of not more than 10 years, a fine of not more than $250,000.00, and a term of supervised release of not more than three years. *See* 18 U.S.C. § 924(c)(1)(B)(i); § 3571(b)(3); § 3583(b)(2).

During Defendant's initial appearance in this District and arraignment, Pamela Perlman was appointed as counsel for Defendant pursuant to the Criminal Justice Act. D.E. 45. On January 3, 2012, the Court granted motions filed by Jason R. Katz, Bertram L. Marks, and Jillian Berger to appear *pro hac vice*. D.E. 50. The Court granted Ms. Perlman's motion to withdraw the same day. D.E. 52.

Defendant's trial was ultimately scheduled for March 20, 2012. D.E. 86. The day of his trial, Defendant was instead rearraigned by District Judge Hood. D.E. 98. Defendant agreed to plead guilty to Count 1 of the indictment, and the United States agreed to dismiss Counts 2 and 3. D.E. 100. Defendant's plea agreement contained an agreed sentence of 130 months of incarceration (*Id.* at 6), which became binding upon the Court once accepted pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). D.E. 100 at 6. Defendant's plea agreement also contained a waiver of his right to appeal and collaterally attack his guilty plea, conviction, and sentence. *Id.* Judge Hood presided over Defendant's sentencing on June 18, 2012 (D.E. 125), and sentenced Defendant to a term of incarceration of 130 months and a term of supervised release of eight years (D.E. 129).

### B. Post-conviction Proceedings

Defendant did not file an appeal to the Court of Appeals for the Sixth Circuit. On June 18, 2013, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. D.E. 137. In his Motion, Defendant alleges seven bases for relief in four enumerated Grounds. *See id.* The Court interprets Defendant's first Ground for relief as containing two arguments. First, Defendant argues that the United States' Notice Regarding Enhanced Statutory Punishment was not filed in compliance with 21 U.S.C. § 851. *Id.* at 4. His second argument is that his enhanced sentence is unconstitutional for many listed but undeveloped reasons. *Id.* Defendant's Ground Two is that his plea agreement is void because the United States used offense conduct charged in Count 3, which was dismissed, as well as other conduct not charged in the indictment, in calculating his U.S. Sentencing Guidelines range. *Id.* at 5–6. Ground Three contains two claims: that the U.S. Sentencing Guidelines violates the *ex post facto* clause of the Constitution, and that it constitutes an unlawful

3

bill of attainder. *Id.* at 7. Defendant's final Ground is that his trial counsel were ineffective because: 1) they failed to act as advocates on his behalf, and 2) they failed to discuss the terms and conditions of his plea agreement with him. *Id.* at 8–9.

On July 1, 2013, the United States filed a motion for an order finding waiver of the attorney-client privilege (D.E. 139) and a motion seeking an extension of time in which to file its response (D.E. 140). The Court granted the motion for an extension of time (D.E. 142) and ordered Defendant to respond to the motion for an order finding waiver of the attorney-client privilege (D.E. 141). Defendant responded to the motion on July 22, 2013. D.E. 143. The Court granted the motion, finding Defendant had waived the attorney-client privilege as to the narrow issues raised in his section 2255 motion. D.E. 144. On August 22, 2013, the United States filed a second motion for an extension of time in which to file its response (D.E. 145), which the Court granted (D.E. 146). The United States ultimately filed its response on October 7, 2013. D.E. 148. Defendant filed his reply on November 15, 2013. D.E. 150.

## II. DISCUSSION

### A. Right to Collateral Attack

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that:

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255(b). If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that

the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotations omitted).

## B. Void Plea Agreement

In Ground Four of his Motion, Defendant alleges that his counsel were ineffective in two ways: 1) that they were not acting as his advocates, and 2) that they did not fully explain the terms and conditions of his plea agreement to him. D.E. 137 at 8–9. His second ineffective assistance of counsel claim implicates the knowing, voluntary, and intelligent nature of his guilty plea. In conjunction, in his second ground, Defendant alleges that his plea agreement is void because offense conduct forming the basis of one of the counts against him that the United States agreed to dismiss was used to enhance his sentence, as was conduct not charged in the indictment. *Id.* at 5–6.

### 1. Ineffective Assistance of Counsel

The Sixth Circuit has held that:

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . , it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Accordingly, the Court begins by analyzing Defendant's claims of ineffective assistance of counsel in order to determine whether such ineffective assistance rendered his plea agreement invalid.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In the context of plea agreements, in order to prove prejudice "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

6

U.S. 52, 59 (1985). This analysis often requires an assessment of success at trial in the absence of counsel's errors, such as whether an un-pursued affirmative defense would have been successful or whether uninvestigated evidence would have likely changed the outcome. *Id*. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Defendant is unable to make a showing of prejudice. First, Defendant does not argue that but for counsel's deficient performance, he would not have pled guilty. That defect is fatal under *Hill*. Moreover, Defendant argues that the prejudice that he suffered is a one-sided plea agreement in favor of the government, which subjected him to "an enhanced conviction and sentence," specifically in regard to the enhancement of his sentence pursuant to section 851. D.E. 137 at 8. Defense counsel has no control over whether the United States files a notice of sentence enhancement pursuant to section 851. Defense counsel *can* challenge an asserted notice by arguing that Defendant was not convicted of the charge noticed in the filing, or by arguing that the prior conviction is invalid. 21 U.S.C. § 851(c). However, Defendant does not assert either of those arguments in his Motion, nor does the record reflect a basis for such a challenge. Had Defendant gone to trial, he would still have been subject to the enhanced penalties he faced at his rearraignment, as those penalties are not affected by the performance of defense counsel. Nor has Defendant presented any evidence whatsoever that the result of a trial would have been different. Thus, there is no reason to think that Defendant would have continued to trial but for counsel's performance during plea negotiations.

Defendant is unable to make the necessary showing of prejudice. Thus the Court will not undertake an analysis as to deficient performance. *See Strickland*, 466 U.S. at 697. Because counsel did not provide ineffective assistance to Defendant, Defendant's plea agreement is not invalid due to ineffective assistance of counsel.

**2. Validity of Defendant's Guilty Plea Absent Ineffective Assistance of Counsel**

In his second ground, Defendant alleges that his plea agreement is void because offense conduct forming the basis for one of the counts against him that the United States agreed to dismiss was used to enhance his sentence, as was conduct that did not constitute an element of the offense of conviction and was not charged. D.E. 137 at 5–6.

A guilty plea is valid if it is entered into knowingly, voluntarily, and intelligently. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). In order for a guilty plea to be valid, the defendant needs to have knowledge of the "relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). The district court is required to verify that a defendant's plea is voluntary per Federal Rule of Criminal Procedure 11. *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007). Specifically, the district court must "verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* (citation omitted) (internal quotation marks omitted). Whether a plea is entered voluntarily and intelligently is determined under the totality of the circumstances. *Brady*, 397 U.S. at 749. A defendant "who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements thereafter." *United States v. Conley-Logan*, No. 12-5245, 2013 WL 59344, at *2 (6th Cir. 2013) (citations omitted) (internal quotation marks omitted).

At Defendant's rearraignment on March 20, 2012, Judge Hood conducted a proper Rule 11 inquiry. *See* D.E. 147. Judge Hood asked Defendant if he had seen a copy of the indictment in the case and discussed the charges and case in general with counsel. *Id.* at 4. Defendant replied affirmatively. *Id.* Defendant also verified that counsel had read his plea agreement to him, that he had fully discussed the plea agreement with counsel, and that he was satisfied that he understood all the term of the plea agreement. *Id.* at 5. Judge Hood then asked if anyone had threatened Defendant or attempted to force him to enter into the plea agreement, and Defendant replied that no one had. *Id.* Defendant also confirmed that the plea agreement represented the entire agreement he had with the United States. *Id.* at 6. Judge Hood then asked the attorney for the United States to review Defendant's plea agreement, which he accurately did. *Compare id.* at 6–9, *with* D.E. 100. Defendant confirmed that the summary given by the attorney for the United States was in fact his plea agreement. D.E. 147 at 9.

Judge Hood then listed the civil rights that Defendant would lose if he were adjudged guilty of Count 1 of the indictment and reviewed the maximum statutory penalties with Defendant, including the fact that his penalty was enhanced due to prior felony drug convictions set forth in the United States' notice pursuant to 18 U.S.C. § 851. *Id.* at 9–10. Defendant stated that he understood the rights that he was losing, the penalties, and the enhancement. *Id.* at 10. Judge Hood then listed the constitutional rights Defendant was waiving by entering a guilty plea, including his right to trial by jury where he would have the right to effective assistance of counsel; to see, hear, and cross-examine all witnesses against him; to compulsory process; to remain silent; and to make the United States prove the case against him beyond a reasonable doubt. *Id.* at 11–12. Defendant confirmed that he understood that he was waiving all of those rights by entering a guilty plea. *Id.*

Finally, Judge Hood read the facts listed in paragraph 3 of Defendant's plea agreement. *See* D.E. 100 at 2–5; D.E. 147 at 13–19. He asked Defendant if those facts, which include statements establishing that Defendant was involved in a conspiracy to distribute crack cocaine, were true, and Defendant replied that they were. D.E. 147 at 19. Counsel for both the United States and Defendant concurred that a sufficient factual basis had been established. *Id.* In sum, Judge Hood conducted a proper Rule 11 inquiry as required by *Brady* and *Dixon*, and Defendant acknowledged that he reviewed and understood the plea agreement, discussed it with counsel, and voluntarily entered into it. Reviewing the totality of the circumstances, the Court finds that Defendant entered his guilty plea knowingly, intelligently, and voluntarily, and thus that Defendant's plea agreement is valid, not void.

This ground also fails on the merits. United States Sentencing Guidelines Manual § 1B1.3(a) lists what constitutes "relevant conduct" in determining a defendant's Guidelines range. Section 1B1.3(a)(1)(A) states that "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" constitute relevant conduct. It contains no requirement that only conduct underlying offenses for which a defendant is convicted, or even charged, be considered as relevant conduct. Section 6B1.2(a) includes the specific point that conduct underlying dismissed charges does not preclude the underlying conduct from being considered relevant conduct. Additionally, "the Sixth Circuit is in the majority of circuits holding that a sentencing court may take into account relevant criminal conduct in counts that were dismissed as part of a plea bargain." *United States v. Barksdale*, 78 F.3d 585, at *5–6 (6th Cir. 1996) (Table) (citing *United States v. Smith*, 887 F.2d 104 (6th Cir. 1989)). This ground for relief fails.

### C. Defendant Knowingly and Voluntarily Waived His Right to Collateral Attack

A defendant's knowing and voluntary waiver of his right to pursue collateral relief in a plea agreement will preclude his ability to file a subsequent § 2255 motion. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001). However, even with such a waiver, a defendant can still attack the knowing and voluntary nature of his guilty plea. *In re Acosta*, 480 F.3d at 422. In order for a waiver of collateral attack rights to be valid, the defendant must "enter into the waiver agreement knowingly, intelligently, and voluntarily." *Davilla*, 258 F.3d at 451. Federal Rule of Criminal Procedure 11(b)(1)(N) requires the District Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence." Compliance with Rule 11(b)(1)(N) is sufficient to show that the defendant entered into the waiver agreement knowingly, intelligently and voluntarily. *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Numbered paragraph eight of Defendant's plea agreement states, "[t]he Defendant waives his right to appeal and his right to attack collateral his guilty plea, conviction, and sentence." D.E. 100 at 6. At Defendant's rearraignment, Defendant verified that counsel had read his plea agreement to him, that he had fully discussed the plea agreement with counsel, and that he was satisfied that he understood all the term of the plea agreement. D.E. 147 at 5. Then Judge Hood asked the attorney for the United States to summarize the pertinent points of Defendant's plea agreement in open court. *Id.* at 6. During the summary, the Assistant United States Attorney read word-for-word numbered paragraph eight of Defendant's plea agreement. *Id.* at 8. After the summary, Judge Hood asked Defendant, "That's your plea agreement, Mr. Patterson?" to which Defendant replied, "Yes, sir." *Id.* at 9. The Sixth Circuit has held that a

defendant's statements that he had read and understood the plea agreement as well as discussed it with counsel, followed by an explanation of the waiver provision of a plea agreement in open court by the prosecutor, is sufficient under Rule 11 to find that a defendant knowingly, voluntarily, and intelligently waived his appellate or collateral attack rights under plain error review. *United States v. Sharp*, 442 F.3d 946, 948–52 (6th Cir. 2006) ("The district court satisfied Rule 11 of the Federal Rules of Criminal Procedure by ensuring that the appellate waiver provision was discussed in open court and that Sharp understood his plea agreement. We therefore hold that there was no error."). Defendant thus entered into the waiver agreement knowingly, intelligently, and voluntarily.

The United States can lose its right to assert the waiver contained in Defendant's plea agreement if not raised at the proper time. *Hunter v. United States*, 160 F.3d 1109, 1113–14 (6th Cir. 1998). However, the United States asserted the waiver in the second sentence of its Response (D.E. 148 at 2), thus asserting it in a timely manner.

Because Defendant knowingly and voluntarily waived his right to collaterally attack his guilty plea, conviction, and sentence, and the United States timely asserted the waiver, Defendant may not challenge his guilty plea, conviction, or sentence in his section 2255 Motion, except for the knowing and voluntary nature of his guilty plea and ineffective assistance of counsel claims. Thus, the Court will not consider the four claims Defendant raises attacking his sentence not otherwise addressed above.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. Moreover, many of Defendant's claims are procedurally barred, but no jurist of reason would find that the question of whether the motion states a valid claim of the denial of a constitutional right is debatable. Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion for 28 U.S.C. § 2255 relief. The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also*

Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 14th day of March, 2014.

Signed By:
Hanly A. Ingram
United States Magistrate Judge